IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMES TRUE TEMPER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1694 |
| | ) | |
| MYERS INDUSTRIES, INC., | ) | Judge Terrence F. McVerry |
| LISTO PRODUCTS, LTD., | ) | Magistrate Judge Amy Reynolds Hay |
| | ) | |
| Defendants. | ) | |
| | | |
| LISTO PRODUCTS, LTD., | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMES TRUE TEMPER, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that plaintiff's motion for relief from judgment pursuant to Fed. R. Civ. P. Rule 60(b)(3), to reopen the case and for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a) [Doc. 21], be denied, and that plaintiff's motion for leave to take discovery in connection with its Rule 60(b)(3) motion [Doc. 30], be denied as well.

II.  REPORT

Plaintiff, Ames True Temper, Inc. ("ATTI"), commenced this action under 35 U.S.C. § 271, alleging that defendants, Myers Industries, Inc. ("Myers") and Listo Products, Ltd.

("Listo"), willfully infringed ATTI's Patent No. 6,360,484 ("'484 Patent") by manufacturing and selling the inventions set forth in the claims of the '484 Patent in the form of decorative planters.

The complaint was filed on December 7, 2005, and served on the defendants on February 6, 2006 [Docs. 1, 3, 4]. As such, defendants were required to file an answer to the complaint on or before February 27, 2006. On February 24, 2006, plaintiff's counsel filed a stipulation to extend the time for defendants to respond to the complaint for sixteen days or until March 15, 2006 [Doc. 5]. On March 15, 2006, defendants filed another stipulation to extend time to respond to the complaint for another nine days or until March 24, 2006, citing to the fact that the parties were in settlement negotiations [Doc. 9]. On March 24, 2006, defendants filed a joint motion asking to again extend the time to respond for another seven days or until March 31, 2006, as the settlement negotiations were proving fruitful [Doc. 10]. Then, on March 31, 2006, Listo filed an Answer to the complaint and counterclaims against ATTI and Myers filed a motion to dismiss for lack of jurisdiction [Docs. 11, 14]. In its Order on Motions Practice, filed on April 4, 2006, the Court directed that plaintiff's response to Myers' motion to dismiss was due within twenty days or by April 20, 2006 [Doc. 16]. On April 19, 2006, plaintiff filed a joint motion seeking an extension of time until April 28, 2006, to respond to Listo's counterclaims and Myers' motion to dismiss again indicating that the additional time was needed to further pursue settlement possibilities which, thus far, had been productive [Doc. 17]. That motion was granted and on May 3, 2006, the parties filed a stipulation of dismissal with prejudice which was granted by the Court on May 4, 2006 [Docs. 19, 20].

Presently before the Court is ATTI's motion for relief from judgment pursuant to Fed. R. Civ. P. Rule 60(b)(3), to reopen the case and for leave to file an amended complaint

pursuant to Fed. R. Civ. P. 15(a), as well as a separate motion for leave to take discovery in connection with its Rule 60(b)(3) motion.

      Motion Pursuant to Fed. R. Civ. P. 60(b)(3)

Rule 60(b)(3) provides relief from a final judgment where there has been "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." See Stridiron v. Stridiron, 698 F.2d 204, 206-07 (3d Cir. 1983). In order to succeed on a 60(b)(3) motion, the movant must not only prove by clear and convincing evidence that the adverse party engaged in the fraud or other misconduct but it must also demonstrate that the misconduct prevented it from "fully and fairly presenting its case." Id. See Katz v. Township of Westfall, 2007 WL 1366780 at *4 (M.D. Pa. May 7, 2007), citing Bandai America Inc. v. Bally Midway Mfg. Co., 775 F.2d 70, 73 (3d Cir. 1985), cert. denied, 475 U.S. 1047 (1986). Cf. Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993) ("Relief under Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur"). Moreover, there "must not be 'neglect on the part of the moving party in pursuing the facts.'" Id.

In the instant case, plaintiff initially argues that defendants abused the settlement process, and thus engaged in fraudulent or other misconduct, by increasing their production of the accused product during settlement negotiations so they could saturate the market. Plaintiff contends that defendants' misconduct is evidenced by the fact that they purposefully prolonged the settlement negotiations and refused to produce their production and sales figures despite repeated requests that they do so, thereby depriving plaintiff of the ability to properly assess the

severity of defendants' infringement or settlement. The record, however, does not support plaintiff's contentions.

First, the complaint in this case was filed on December 7, 2005, and the matter settled on May 3, 2006, only five months later. The Court is hard pressed to find under what circumstances this could be considered a prolonged period of time to settle a case. Moreover, during that period of time, plaintiff itself filed a stipulation to extend the time within which defendants had to respond to the complaint, as well as a joint motion for additional time within which it was to respond to Listo's counterclaim and Myers' motion to dismiss. Given that plaintiff itself asked to delay the progression of the case two times in order to pursue settlement negotiations, it is difficult to see how defendants can be charged with prolonging the process.

In addition, it does not appear that defendants' failure to provide its production and sales figures to plaintiff during the settlement negotiations is of particular significance given that the parties had not yet engaged in discovery. Indeed, the record establishes that the case settled before a conference was scheduled by, or a discovery plan submitted to, the Court as is required before formal discovery is properly sought. See Fed. R. Civ. P. 26(d) ("[A] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," which requires the parties to confer and submit a proposed discovery plan to the Court prior to a scheduling conference). See also Alston v. Parker, 363 F.3d 229, 236 n.11 (3d Cir. 2004) (Noting that "Rule 26(d) provides that discovery is not to commence until a discovery conference has occurred pursuant to Rule 26(f), which the District Court here did not schedule"). Under these circumstances, defendants were under no obligation to disclose any information to plaintiff and their failure to do so cannot provide the basis for finding that they improperly concealed

4

information or engaged in fraud or other misconduct.[1] See Kerwit Medical Products, Inc. v. N.&H. Instruments, Inc., 616 F.2d 833, 837 (5th Cir. 1980) (Finding that the plaintiff was under no obligation to suggest to defendant or advise the court of facts relevant to a potential defense where defendant "opted to settle the case before completing discovery, obviously for reasons it then deemed sufficient.  That it may have acted differently on different facts is no basis for grounding a complaint of fraud"); Total Containment, Inc. v. Environ Products, Inc., 1996 WL 239877 at * 2 (E.D. Pa. May 6, 1996) (Finding that the plaintiff had no obligation to disclose the terms of a contract to defendant where defendant had not cited to any discovery requests that called for such information).  Cf. Piergrossi v. Karcewski, 1995 WL 393804 at *3 (E.D. Pa. June 30, 1995) (Finding that the "representation by a party in a motion for summary judgment that certain facts are undisputed, even when that party knows that those facts are actually in dispute, does not establish fraud or other misconduct by that party," and that the moving party is under no obligation to aid the non-moving party in coming forward with evidence to support his side of the case).  Thus, it does not appear that plaintiff has demonstrated fraud or any misconduct by clear and convincing evidence.

    Moreover, even if defendants somehow abused the settlement process by failing to disclose that they were increasing their production of the accused planters at the same time settlement negotiations were taking place, it does not appear that such conduct, even if considered fraudulent or a misrepresentation, prevented plaintiff from fully and fairly presenting

---

[1] Moreover, as defendants have argued, as direct competitors in the market for decorative planters, it would appear that they had every reason not to disclose confidential financial information with plaintiff absent a formal discovery request. Defs.' Brief, pp. 6-7 [Doc. 32-1].  See Kerwit Medical Products, Inc. v. N.&H. Instruments, Inc., 616 F.2d 833, 837 (5th Cir. 1980) ("An attorney is to be expected to responsibly present his client's case in the light most favorable to the client, and it is not fraudulent for him to do so").

5

its case. Rather, it appears that it was plaintiff's decision to settle the case rather than pursue the facts it believed it was entitled to through discovery that thwarted its ability to properly assess the extent of defendants' alleged infringement. See Bandai America Inc. v. Bally Midway Mfg. Co., 775 F.2d at 73; Kerwit Medical Products, Inc. v. N.&H. Instruments, Inc., 616 F.2d at 837; Katz v. Township of Westfall, 2007 WL 1366780 at *4. Indeed, as argued by defendants, there was nothing to prevent plaintiff from allowing the litigation to proceed to discovery before it agreed to settle the case, which it was apparently content to do based on the information available to it at the time. It cannot now claim that the defendants should somehow be held responsible for failing to disclose information that plaintiff consciously decided to forego obtaining. See Bandai America Inc. v. Bally Midway Mfg. Co., 775 F.2d at 74 ("In settling [Bandai] surrendered the right to pursue additional discovery, and .... [t]he record does not support the inference that Bandai's decision to relinquish further discovery related to any alleged misrepresentation by counsel for Midway"); Favors v. United States of America, 2004 WL 1631417 at * 3 (E.D. Pa. July 21, 2004), aff'd, 137 Fed. Appx. 493 (3d Cir. 2005) (Declining to grant relief under Rule 60(b)(3) finding that plaintiff could have sought leave to engage in discovery and, thus, was "unlike a party who is unfairly prejudiced by her adversary's concealment of documents or blind-sided by the adversary's perjury at trial"). See also Project Management Institute, Inc., 144 Fed. Appx. 935, 937 (3d Cir. 2005), cert. denied, 546 U.S. 1187 (2006), quoting Philadelphia Welfare Rights Organization v. Shapp, 602 F.2d 1114, 1120 (3d Cir. 1979), cert. denied, 444 U.S. 1026 (1980) ("[W]hen, as here, the 'defendants made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost'").

6

As well, it should be noted that plaintiff has represented that it chose to settle the case in order to avoid an adverse financial effect on its customers who had already purchased the allegedly offending planters from defendants.[2]  See Pl.'s Brief, p. 3.  It would appear that a desire to avoid financial consequences for its customers would be unaffected by the number of pots that defendants were producing.  Stated differently, the financial impact on plaintiff's customers as the result of defendants being enjoined from producing the accused planters would remain the same whether defendants were manufacturing 1000 pots or 60,000.  As such, it does not appear that plaintiff's lack of knowledge regarding the number of pots being produced or defendants' purported misrepresentation in this regard could have "induced" plaintiff to settle the case, as it has suggested, or otherwise prevented plaintiff from fully and fairly presenting its case.  See Bandai America Inc. v. Bally Midway Mfg. Co., 775 F.2d at 74.  See also Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 134-35 (1st Cir. 2005) (Finding that newly discovered evidence of *commercial* wrongdoing are not encompassed by Rule 60(b)(3) which concerns *litigation-based* fraud or that which interferes with the process of adjudication).

Plaintiff also asserts that defendants engaged in fraudulent conduct when they breached the settlement agreement as evidenced by the fact that they continued to manufacture and sell the offending planters after they were to have ceased doing so.

It is undisputed that the Settlement Agreement, which was effective in April of 2006, provides that Listo was to, amongst other things, "cease by August 1, 2006, the

---

[2] It appears that plaintiff did not begin designing and building the molds which would enable it to manufacture the decorative planters at issue until sometime after the Settlement Agreement was entered into in April of 2006 and, thus, plaintiff would not have been in a position to provide replacement planters to customers that had already purchased them from defendant had an injunction been granted. See Pl.'s Motion ¶ 12 [Doc. 21-1]; Pl.'s Brief, p. 3 [Doc. 22].

manufacturing and its sale and shipment of *all* decorative planters with collars that engage the underside of the flange," i.e., the accused planters. Pl's Exh. C: Settlement Agreement, p. 2 (emphasis added) [Doc. 21-4].³ It also appears undisputed that Listo continued to manufacture and sell the accused planters in Canada through December of 2006, and, thus, arguably breached the Settlement Agreement. See Pl.'s Exh. J: Listo Certification re Post 8/1/06 Shipments. Although defendants contend that it did not violate the Settlement Agreement because it necessarily pertained only to products sold in the United States, as plaintiff did not have a patent in Canada at the time and because the instant litigation only revolved around the '484 Patent issued in the United States, whether or not a breach occurred appears irrelevant to whether plaintiff is entitled to relief under Rule 60(b)(3).

As previously discussed, the misconduct complained of in a Rule 60(b)(3) motion must be conduct that prevented the moving party from fully and fairly presenting its case, that is, conduct that was engaged in in order to obtain the judgment or final order. In re Daniels, 2003 WL 22056387 at *1 (M.D. Pa. August 6, 2003). See Stridiron v. Strideron, 698 F.2d at 206-07; Optimal Health Care Services, Inc. v. Travelers Inc., 801 F. Supp. 1558, 1561 (E.D. Tex. 1992) ("Rule 60(b)(3) seeks to rectify judgments improperly entered because of misrepresentations and unfair litigation tactics..."). As such, the misconduct at issue necessarily relates to actions taken prior to the entry of judgment. See Garland v. US Airways, Inc., 2007 WL 433178 at *1 n.4 (W.D. Pa. 2007), quoting Optimal Health care Services, Inc. v. Travelers Inc., 801 F. Supp. at

---

³We note here that plaintiff suggested at oral argument that defendants also violated the Settlement Agreement by continuing to manufacture the offending planters between the date the settlement was effective and August 1, 2006, since it was told that defendants needed until August 1, 2006, only to sell off its existing inventory. See Hearing Transcript, pp. 13, 59 [Doc. 37]. Plaintiff's argument, however, is belied by the Settlement Agreement which, as cited here, expressly contemplates the continued manufacture of the accused planters through July 31, 2006.

1561 ("'Rule 60(b)(3) is aimed at misconduct which occurred between the time the plaintiff files a lawsuit and the time the court enters judgment,' and not the alleged fraud underlying the plaintiff's substantive claim").

Here, however, the actions complained of, whereby defendants allegedly breached the Settlement Agreement, occurred between August and December of 2006, which was after judgment has been entered and, consequently, could not have been designed to obtain the judgment or induce plaintiff to settle the case.  As such, the alleged breach could not have prevented plaintiff from fully or fairly presenting its case and does not provide the basis for relief under Rule 60 (b)(3).

Indeed, it appears clear that plaintiff seeks to have its entire infringement action reinstated as a penalty against defendants for allegedly breaching the Settlement Agreement.  As found by the United States District Court for the Eastern District of Pennsylvania, however, "[t]he mere breach of a settlement agreement is not grounds to set aside a judgment dismissing a case." U.S. v. Insurance Co. of North America, 1999 WL 305514 at *3 (E.D. Pa. May 12, 1999), citing Sawka v. Healtheast, Inc., 989 F.2d at 140.  See Ulloa v. City of Philadelphia, 692 F. Supp. 481, 487 (E.D. Pa. 1988), citing Mastini v. American Telephone & Telegraph Co., 369 F.2d 378, 379 (2d Cir. 1966), cert. denied, 387 U.S. 933 (1967) ("[T]he motion must not be merely an attempt to relitigate the case"); In re Daniels, 2003 WL 22056387 at *1-2, quoting Optimal Health care Services, Inc. v. Travelers Inc., 801 F. Supp. at 1561 (Finding that Rule 60(b)(3) does not seek "'to provide a backdoor to undermine an otherwise valid merit-based dismissal of an action ...'").  Rather, it appears that plaintiff's remedy is to seek damages for any injury it has sustained as a result of defendants' subsequent breach of the Settlement Agreement and not to

litigate its infringement claims that it freely chose to settle.  U.S. v. Insurance Co. of North America, 1999 WL 305514 at 3 ("Plaintiff, of course, has the option of filing a separate action on the settlement agreement itself").  Cf. Sawka v. Healtheast, Inc., 989 F.2d at 140-41 (Concluding that a Rule 60(b)(6) motion based on the alleged breach of the settlement agreement was properly denied where plaintiff could file a separate action on the settlement agreement thereby precluding a finding that an extreme or unexpected hardship would occur absent relief).  Because plaintiff has failed to establish either that defendants committed fraud on the court or that the alleged misrepresentations prevented plaintiff from fully and fairly litigating its claims, plaintiff's Rule 60(b) motion is properly denied.

### Motion for Leave to Take Discovery in Connection with Rule 60(b)(3) Motion

Plaintiff has also filed a motion asking the Court for leave to take discovery in order to obtain information regarding the extent of defendants' improper conduct during negotiations and its subsequent breach of the Settlement Agreement, which plaintiff contends is necessary before the Court can meaningfully address its Rule 60(b)(3) motion.  Relying principally on Pearson v. First NH Mortgage Corp., 200 F.3d 30 (1st Cir. 1999), plaintiff argues that courts have repeatedly allowed the moving party to take some discovery in connection with a Rule 60(b) motion, "where there has been no access to the requested discovery during the initial proceedings" and where a colorable claim of fraud has been made.  Pl.'s Brief, p. 8 [Doc. 31].

In Pearson, appellant Pearson, a chapter 7 debtor, filed a motion to vacate an order approving a compromise settlement of claims that the chapter 7 trustee could have brought against the bank, arguing that the settlement was the result of fraud on the court.  Specifically, Pearson argued that the trustee had acted in concert with his attorney and the bank to bring about

the settlement. The Bankruptcy Court denied the motion finding that Pearson had failed to prove fraud by clear and convincing evidence and that he was not entitled to discovery into the matter or an evidentiary hearing having failed to produce a "smoking gun" demonstrating the conflict of interest or any intention to conceal the conflict. The District Court affirmed in an unpublished opinion and Pearson appealed to the First Circuit.

There, the Court reversed finding that "the record plainly includes considerable evidence of serious conflicts of interest which could tend to divide Attorney Gannon's loyalties, as between Pearson's interests and the interests of Pearson's creditors," and held that "once the record evidence demonstrates a "'colorable' claim of fraud, the court may exercise its discretion to permit preliminary discovery and evidentiary proceedings." Id. at 35. In so concluding, the Court opined that the "colorable claim" standard was more appropriate than requiring the moving party to first produce a "smoking gun," "because claimants who have been denied both preliminary discovery and an opportunity to present witnesses may well be left with no meaningful access to direct evidence of fraudulent intent, notwithstanding an abundance of telltale circumstantial evidence." Id. Plaintiff here therefore argues that because it has demonstrated a colorable claim of fraud and because it was denied the opportunity to take formal discovery before the case was settled, it should be permitted to do so now.

Although defendants dispute the applicability of the "colorable claim" standard, instead relying on Goldy v. Beal, 91 F.R.D. 451, 455 (M.D. Pa. 1981), for the proposition that plaintiff is not entitled to discovery absent a *prima facie* showing of success on the merits, they contend that plaintiff is unable to meet either standard and, thus, is not entitled to discovery. We agree.

11

Indeed, the only evidence cited by plaintiff to support a colorable claim of fraud is correspondence between its representatives and that of defendant between September of 2006 and February 21, 2007, the last of which shows that defendants continued to ship the accused planters in Canada after August 1, 2006. While this evidence may arguable show that defendants breached the Settlement Agreement, as previously discussed, it does not demonstrate a colorable claim of fraud designed to induce a settlement in the first instance. See Garland v. U.S. Airways, Inc., 2007 WL 433178 at 1 n.4; In re Daniels, 2003 WL 22056387 at *1. See also U.S. v. Insurance Co. of North America, 1999 WL 305514 at *3.

Moreover, although plaintiff also cites to the fact that defendants prolonged the negotiations and improperly refused to turn over production and sales figures to bolster its position that defendants engaged in misconduct during negotiation, we have already found that the record does not support a finding that negotiations were drawn out and that defendants had no obligation to divulge its production and sales figures at the time. As such, neither of these assertions lends support to plaintiff's position that it has presented a colorable claim of fraud or that it is entitled to discovery.

In this manner, the cases upon which plaintiff relies are easily distinguishable from the instant case as it is clear in those cases that the moving party was able to demonstrate a colorable claim of fraud before either discovery or an evidentiary hearing was permitted. For example, in Southerland v. Irons, 628 F.2d 978 (6th Cir. 1980), the evidence of record demonstrated that the Court approved a $500,000.00 settlement agreement negotiated by the parties after the plaintiff's attorney had agreed to pay the plaintiff's litigation expenses as well as the Michigan Department of Social Services ("MDSS") lien on her right of recovery from his

50% contingency fee.  Id. at 979.  The evidence also showed that counsel not only failed to make those payments but had actually had the MDSS excluded from the list of Payees on the settlement check.  There was also evidence that counsel made several other misrepresentations to the MDSS and the Court regarding the allocation of damages.  Thus, the Court held an evidentiary hearing to resolve the Rule 60(b) motion filed by the MDSS only after concluding that a colorable claim of fraud had been demonstrated.[4]  Id.

Similarly, in Midwest Franchise Corp. v. Metromedia Restaurant Group, Inc., 177 F.R.D. 438 (N.D. Iowa 1997), the plaintiff discovered after trial that a witness was engaged in employment negotiations with the defendants at the time he testified.  The plaintiff filed a motion seeking leave to depose the witness in order to discover facts to support a Rule 60(b) motion.  Noting that the plaintiff was required to make a *prima facie* showing of entitlement to relief under Rule 60(b) before it was entitled to discovery after judgment, and finding that the fairness of the trial had, indeed, been called into question, the Court permitted the witness to be deposed.  Id. at 440, 442.

Last, in Sheng v. Starkey Laboratories, Inc., 53 F.3d 192 (8th Cir. 1995), having referred the case to a magistrate judge for a settlement conference and having been informed that the matter had, in fact, been settled, the district court issued an order dismissing the case.  The defendant subsequently filed a motion pursuant to Rule 60(b)(1) arguing that a final settlement had never been reached and, thus, the judgment was based on a mistake.  At the same time, the plaintiff filed a motion to enforce the settlement.  Thus, whether or not the parties had, in fact,

---

[4]We note here that there is no evidence in the case that MDSS either sought or was granted discovery in conjunction with its Rule 60(b) motion.

entered into a binding settlement agreement was squarely at issue in both motions. The district court, however, granted the plaintiff's motion and denied the defendant's without holding an evidentiary hearing. On appeal, the Court of Appeals for the Eighth Circuit found that, "when the parties dispute the existence or terms of a settlement agreement, the parties must be allowed an evidentiary hearing." Id. at 194. Thus, although the case was remanded for a hearing, the basis for doing so was to ascertain whether a settlement agreement had been entered into in the first instance -- which is not at issue here -- and not simply because the defendant had filed a Rule 60(b) motion. Thus, none of the cases cited by plaintiff stands for the proposition that a moving party is entitled to either discovery or an evidentiary hearing absent a colorable claim of fraud.[5]

      Finally, while the Court in Pearson was particularly concerned with situations where a claimant had been denied discovery and, thus, had no access to direct evidence of fraudulent intent, no such concern is at issue here. Despite plaintiff's repeated protestations that it was somehow "*denied* the opportunity to take formal discovery before the case was settled,"

---

[5]Plaintiff has also cited United States v. State of Michigan, 680 F. Supp. 928 (W.D. Mich. 1987) ("Michigan"), for the proposition that it should be entitled to engage in post-judgment discovery since "a dispute as to facts arising following the judgment from which relief is sought is inherently distinct from an effort to rehash issues that have already been exhausted." Pl.'s Brief, pp. 9-10. Michigan, however, appears completely irrelevant to the case at bar as it concerned the applicability of Fed. R. Civ. P. 33 to post-judgment proceedings where post-judgment intervenors in a prison over-crowding case filed a post-judgment motion to be excluded from the consent decree previously entered in the case. Under those circumstances, the Court held that because the intervenors' motion did "not concern matters that were the subject of pretrial discovery," and did "not represent a direct attack on the merits of the judgment," it was more akin to the filing of a separate action and, thus, found that allowing post-judgment discovery under Rule 33 was proper. Id. at 1020. Here, however, unlike in Michigan, plaintiff is not only seeking discovery that would have been the subject of pretrial discovery, i.e., information regarding the extent to which defendants allegedly infringed on the '484 Patent, had it chosen to engage in it, but plaintiff's Rule 60(b)(3) motion clearly implicates the judgment entered in this case. See Pl.'s Brief, p. 6. As such, Michigan, has no applicability to the instant case.

and was in some manner "*precluded* from engaging in formal discovery due to the procedural status of the case," it is clear that the only thing that prevented plaintiff from engaging in discovery was plaintiff, or, more precisely, plaintiff's decision to settle the case without engaging in any formal discovery.  There is absolutely nothing in this record which supports a finding that plaintiff was unable to allow the "procedural status" of the case to move forward to formal discovery before continuing negotiations and agreeing to settle the case, and plaintiff has not otherwise provided an explanation as to why it could not have done so.  Under these circumstances, the mere fact that discovery did not take place during the underlying proceedings does not provide the basis for permitting plaintiff to engage in it now, particularly where plaintiff has failed to demonstrate a colorable claim of fraud in the first instance.  See H.K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1121 (6th Cir. 1976) (Finding that the defendant was "plainly not entitled to discovery of documents it did not request in pretrial discovery," and that it had nevertheless failed to meet its evidentiary burden showing that it was entitled to post-judgment discovery under Rule 60(b)).  See also Kerwit Medical Products, Inc. v. N.&H. Instruments, Inc., 616 F.2d at 837; Signtech USA, Ltd. v. Vutek, Inc., 1999 WL 33290625 at *3 (W.D. Tex. Aug. 9, 1999) ("[T]he parties should not be given the opportunity to reopen discovery for the purpose of discovering information which could have been gained before trial").

    For these reasons, it is recommended that plaintiff's motion for relief from judgment pursuant to Fed. R. Civ. P. Rule 60(b)(3), to reopen the case and for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a) [Doc. 21], be denied, and that plaintiff's

motion for leave to take discovery in connection with its Rule 60(b)(3) motion [Doc. 30] be denied as well.

      Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objection shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                            Respectfully submitted,

                                            /s/   *Amy Reynolds Hay*
                                            United States Magistrate Judge

Dated: 30 October, 2007

cc:     Hon. Terrence F. McVerry
         United States District Judge

         All counsel of record by Notice of Electronic Filing